'IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES WILLIAMS,** | : | CIVIL ACTION NO. 1:01-CV-2345 |
| **Plaintiff** | : | (Judge Conner) |
| v. | : | |
| **COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF CORRECTIONS, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

This is a § 1983 actions initiated by plaintiff Charles Williams ("Williams"), an inmate incarcerated at the state correctional institutional at Rockview ("SCI-Rockview") for injuries allegedly sustained during his participation in the Therapeutic Community Unit ("TCU") at SCI-Rockview.  The remaining defendant is Norris B. Webb ("Webb"), the Director of the TCU program.

### I.   Procedural History

Because the parties are familiar with this action's extensive procedural history, the court will recount only the most recent events.  By mandate entered September 7, 2005 (Doc. 83), the U.S. Court of Appeals for the Third Circuit affirmed this court's decision regarding dismissal as to all defendants except Norris Webb.  With regard to the dismissal of defendant Webb, the Third Circuit ruled that Williams had not failed to exhaust those claims against Webb that fell within the ambit of Williams' June 7, 1999 inmate grievance, ROC-0404-99.  The Third Circuit directed that the matter be remanded for consideration of these claims.

Upon remand, the court issued a scheduling order setting the matter for trial on January 3, 2006. (See Doc. 84.) Thereafter, Webb sought leave of court to file a second motion for summary judgment (see Doc. 101), which the court granted on December 1, 2005 (see Doc. 103).

Upon review of the parties' briefs, the court noted that neither party had complied with Local Rule 56.1, which provides, in pertinent part, as follows:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P. 56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried. Statements of material facts in support, or in opposition to, a motion shall include references to the parts of the record that support the statements.

Accordingly, on May 16, 2006, the court ordered the parties to supplement their L.R. 56.1 statements. (See Doc. 121.) Webb filed a supplemental statement on May 30, 2006 (Doc. 122) and Williams filed his response to Webb's statement on June 16, 2006 (Doc. 124). This matter is now ripe for disposition.[1]

---

[1] The court also notes that, in the interim, Williams has filed two motions for recusal of the undersigned (Docs. 116, 148) and four discovery motions (Docs. 118, 125, 134, 141).

**II.    Factual Background**[2]

The facts pertinent to Webb's second motion for summary judgment are principally undisputed. The TCU program is a program designed to teach discipline and responsibility through the guidance of peer inmates.[3] The program maintains a hierarchy of peer inmates who perform various unit activities in a communal effort to repress aggressive and assaultive inmate behavior. Inmates who demonstrate the desired traits of restraint and responsibility are ultimately designated as "teachers" and are given responsibility for guiding other inmates in the program. (Doc. 122 ¶¶ 3, 5; Doc. 124 ¶¶ 3, 5.)

If an inmate housed in the TCU fails to perform certain assigned activities he is identified as a "misfit" and subject to disciplinary action.[4] This disciplinary action may require the inmate to perform calisthenics or various housekeeping functions such as mopping and sweeping and emptying trash cans. (Doc. 122 ¶¶ 3, 5; Doc. 124 ¶¶ 3, 5.) Ostensibly, inmate teachers are expected to verify that an inmate is not on medical restriction before subjecting the inmate to misfit coordination. (Doc. 122 ¶ 6; Doc. 124 ¶ 6.)

---

[2] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to plaintiff, the non-moving party. See infra Part III.

[3] The parties dispute whether Williams' participation in the TCU program was consensual. (Doc. 122 ¶ 4; Doc. 124 ¶ 4.)

[4] The parties refer to this entire process as "misfit coordination."

If an inmate is designated for misfit coordination but refuses to participate in the disciplinary action, the inmate may be placed on "non-function" status. Inmates who are on non-function status live in the TCU housing unit but do not participate in unit activities. If an inmate remains on non-function status for an extended period of time, he may be removed from the program and returned to a regular housing unit in the institution's general population. (Doc. 122 ¶¶ 7-9; Doc. 124 ¶¶ 7-9.)

According to his grievance (ROC-0404-99), Williams alleges that another inmate directed him to carry a crate of books weighing approximately sixty pounds. After initial compliance with the "teacher's" directive, Williams requested that he be given some other task. The inmate ordered Williams to perform push-ups. Allegedly, while Williams was performing push-ups, the "teacher" inmate placed the crate of books weighing approximately sixty pounds on Williams' back. Although the grievance is somewhat unclear as to what transpired next, Williams was apparently placed on non-function status based upon his inability to continue to participate in the "misfit coordination" involving the crate of books. (Doc. 99, Ex. 2.)

On May 11, 1999, Williams was called into Webb's office and asked why he was on non-function status. Williams explained the episode involving the crate of books. Apparently, Webb was unsympathetic and advised Williams that he would be required to go through another "misfit coordination" or he would be terminated from the TCU program. (Doc. 99, Ex. 2.) Shortly thereafter, Williams was placed on

medical restriction by SCI-Rockview medical personnel. (Doc. 122 ¶ 10; Doc. 124 ¶ 10.)

On May 25, 1999, Webb again called Williams into his office and directed Webb to submit to the "misfit coordination" process. Williams resisted Webb's directive, advising him that he was not physically capable of performing all of the duties required by the misfit coordination process. He also reminded Webb of his medical restriction. Webb responded that he was aware of the medical restriction, but did not understand why Williams was unable to perform the activities required by the misfit coordination process. Williams alleges that Webb threatened to remove him from the program if he did not submit to another misfit coordination and Williams reluctantly complied. (Doc. 99, Ex. 2.)

On June 4, 1999, Williams' misfit coordination involved mopping, sweeping, push-ups, squat-thrusts, cleaning tables, picking up books, emptying waste cans and carrying garbage cans weighing as much as seventy pounds.[5] Williams alleges that he was afraid to disobey the misfit coordination directives and, accordingly, performed all required duties. He further alleges that he was injured during the process and admitted into the prison's infirmary on June 5, 1999. (Doc. 99, Ex. 2.)

---

[5] As part of the "misfit" designation, inmates are apparently required to perform these menial tasks wearing an outer layer of toilet paper placed on them by inmate "teachers." (Doc. 99, Ex. 2.)

### III.    Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  It places the burden on the non-moving party to adduce "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

### IV.    Discussion

Defendant Webb moves for summary judgment on Williams' Eighth Amendment claim on the ground that Williams voluntarily entered the TCU and chose to remain in that unit after medical personnel issued his medical restriction. In essence, Webb argues that even if Williams was subject to physical exercise as part of misfit coordination, his participation was consensual, relieving Webb of any liability for subsequent injuries.  Webb contends that Williams' refusal to participate in misfit coordination would have resulted, at worst, in Williams' removal from the TCU.  (See Doc. 99 at 8.)  In his brief, Webb states: "Because

plaintiff was aware of his medical restriction and voluntarily continued to participate in TCU activities rather than leave the TCU program, plaintiff may not hold Mr. Webb liable for the injuries that he suffered as a result of his participation." (Doc. 99 at 8.) Webb notes that push-ups, sit-ups and housekeeping chores are not, in themselves, cruel or unusual punishment in violation of Williams' Eighth Amendment rights. (See Doc. 99 at 9.)

The court is not persuaded by Webb's argument. It is undisputed that Williams was injured while participating in the misfit coordination process. Indeed, Webb admits that Williams was ultimately examined by a physician and diagnosed with an inguinal hernia. (Doc. 9 ¶ 46; Doc. 122 ¶ 10.) In addition, Williams contends that he was pressured into reentering the misfit coordination process, stating:

> The plaintiff contends that if he would have refused to obey Norris Webb's order on May 25, 1999 that the plaintiff could have been issued a misconduct (DC-141) for failing to obey Norris Webb's order. Charles Williams could have actually been forced to participate in a disciplinary hearing administered by the hearing examiner at SCI-Rockview for failing to obey Norris Webb's order. If the hearing examiner would have determined that the plaintiff failed to obey Norris Webb's order that Charles Williams could have been placed in SCI-Rockview's restricted housing unit, that the prison administration would not have recommended the plaintiff for prerelease or parole and the plaintiff would have likewise lost the liberty interest that he had of enlisting in a halfway house while released from SCI-Rockview on prerelease and Charles Williams would not have been allowed to spend any time with his mother who was at that time dying from cancer.

Thus, the record reflects a factual dispute as to whether Williams' participation in the misfit process was involuntary or consensual.

7

In light of this clear factual dispute, summary judgment is inappropriate and the defendant's motion must be denied. This matter will proceed to trial. An appropriate order will issue.

        S/ Christopher C. Conner
        CHRISTOPHER C. CONNER
        United States District Judge

Dated:    December 4, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES WILLIAMS,** | : | **CIVIL ACTION NO. 1:01-CV-2345** |
| **Plaintiff** | : | **(Judge Conner)** |
| v. | : | |
| **COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF CORRECTIONS, et al.,** | : | |
| **Defendants** | : | |

**O R D E R**

AND NOW, this 4th day of December, 2006, upon consideration of the motion for summary judgment (Doc. 98), filed by defendant Norris B. Webb, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion for summary judgment (Doc. 98) is DENIED.

2. A revised pretrial and trial schedule shall issue by future order of court.

        S/ Christopher C. Conner
        CHRISTOPHER C. CONNER
        United States District Judge